IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DOYLE NORMAN,

    Plaintiff,

v.

BPR BRAMPTON LLC,

    Defendant.

CIVIL ACTION NO.: 6:20-cv-95

**O R D E R**

This matter is before the Court on the parties' Joint Motion for Court Review and Approval of Settlement Agreement and to Dismiss with Prejudice (hereinafter, the "Joint Motion"). (Doc. 25.) In this lawsuit, Plaintiff, who was employed by Defendant from January 2019 to September 2020, alleges that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime wages for time that he claims he worked in excess of forty hours in given workweeks. (Doc. 1, pp. 1–2.) In the Joint Motion, (doc. 25), Plaintiff and Defendant seek the Court's review and approval of their "Settlement Agreement and Release of Claims" (hereinafter, the "proposed Settlement Agreement"), (doc. 25-1). After careful review of the proposed Settlement Agreement, and for the reasons set forth more fully below, the Court **DENIES** the Joint Motion, (doc. 25), without prejudice.

**DISCUSSION**

Congress enacted the FLSA with the purpose of protecting workers from oppressive working hours and substandard wages. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). Because workers and employers often possess unequal bargaining power,

Congress made the FLSA's wage and hour limitations mandatory. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706–07 (1945). Making the provisions mandatory meant eliminating the ability of workers and employers to negotiate an employment arrangement that falls short of the FLSA's minimum employee protections. Barrentine, 450 U.S. at 740.

Accordingly, the FLSA's provisions are not subject to bargaining, waiver, or modification either by contract or settlement, save for two narrow exceptions. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352–53 (11th Cir. 1982). The first exception involves actions taken by the Secretary of Labor, and thus is inapplicable to the proposed settlement in this case. See id. at 1353. The second exception, which applies here, permits settlement when employees bring a private action for back wages under 29 U.S.C. § 216(b). Id. In such an instance, the parties must present the proposed settlement to the court, and the court may approve it "after scrutinizing the settlement for fairness." Id. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,]" then the court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1354. The settlement can cover back wages, liquidated damages, reasonable attorney's fees, and costs of the action. 29 U.S.C. § 216(b).

## I. Bona Fide Dispute

Before approving the proposed Settlement Agreement, the Court must determine whether a true conflict exists. A true conflict requires a bona fide dispute over FLSA provisions. Lynn's Food Stores, 679 F.2d at 1354–55. When an employee is represented by counsel in a lawsuit under the FLSA for back wages, there is some assurance of an adversarial context and that "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." Id. at 1354; accord Barnes v. Ferrell Elec.,

2

Inc., No. 1:13-CV-056, 2013 WL 5651903, at *1 (S.D. Ga. Oct. 16, 2013) ("Plaintiff filed suit and is represented by counsel, which provides some indication that a true conflict exists between Plaintiff and [his] employer.").

The present case constitutes a bona fide dispute. First, Plaintiff's Complaint asserts he was "employed by Defendant and paid on a salary basis, [but that he] regularly worked an amount of time that was more than 40 hours in given workweeks and was not paid the overtime wage differential for hours he worked over 40 in workweeks," as required by the FLSA, 29 U.S.C. § 207. (Doc. 1, pp. 3–4.) He seeks to recover unpaid wages, liquidated damages under the FLSA, pre-judgment interest on unpaid wages, and attorney's fees and costs. (Id. at pp. 5–6.) Consistently therewith, the Joint Motion states that Plaintiff believes he was "eligible for overtime pay," at a rate of "one and one half times his regular rate," for a total of 440 overtime hours that he claims he worked while paid on a salary basis. (Doc. 25, p. 2.) Defendant denies Plaintiff's FLSA claim. (Doc. 12.) In the Joint Motion, Defendant explains that it "disputes that Plaintiff worked the number of hours he claims to have worked[;] . . . contends that Plaintiff was properly classified as exempt from overtime and that he was properly paid at all times[;] . . . asserts that damages, if any, must be calculated on a half-time basis[;] . . . and disputes that the facts warrant an application of liquidated damages." (Doc. 25, pp. 2–3.) Moreover, Plaintiff's representation by counsel provides some additional assurance of a true conflict. Finding the presence of a bona fide dispute, the Court turns to the fairness and reasonableness of the settlement.

## II. Fairness and Reasonableness of Settlement Agreement

Despite having found that the parties are engaged in a bona fide dispute over Plaintiff's entitlement to unpaid overtime compensation, the Court rejects the proposed Settlement Agreement because it is not fair and reasonable as written for the following reasons.

### A. Confidentiality Provision

First, the settlement agreement contains a confidentiality provision, which provides that:

**Confidentiality**: The Parties agree that, except to the extent already of public record by virtue of the Lawsuit, the terms of this Agreement, the substance of any discussion about this Agreement, and the opinions and facts underlying the Agreement (collectively, the "Confidential Information") are to be deemed confidential and shall not be disclosed to anyone, whether directly or indirectly, except as may be required by law or as otherwise necessary in connection with the Parties' receipt of legal and/or tax advice, but then only upon obtaining the undertaking of such persons to preserve the confidentiality of the Confidential Information.

(Doc. 25-1, pp. 2–3.)

"Provisions in a FLSA settlement agreement that call for keeping the terms of the settlement confidential or prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." Housen v. Econosweep & Maint. Servs., Inc., No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. Jun. 6, 2013). Moreover, courts within this circuit routinely reject confidentiality clauses in FLSA settlement agreements because they "thwart Congress's intent to ensure widespread compliance with the FLSA." Barrera v. Home Paramount Pest Control Co., No. 6:20-cv-1639-RBD-GJK, 2021 WL 1382146, at *4 (M.D. Fla. Apr. 9, 2021) (quotations omitted), *report and recommendation adopted*, 6:20-CV-1639-RBD-GJK, 2021 WL 1394138 (M.D. Fla. Apr. 13, 2021). Additionally, "[s]uch provisions are rejected because they are inherently unenforceable due to the public filing of the settlement agreements containing the confidentiality clauses." Id. (citing Manso v. D. & R. Granite & Marble, LLC, No. 2:18-cv-283-FtM-38MRM, 2018 WL 46106644, at *2 (M.D. Fla. Sept. 10, 2018) (where parties affirmatively filed their agreement in the public record confidentiality is non-existent); Housen, 2013 WL 2455958, at *2 (confidentiality clauses are unenforceable when the settlement agreement is filed on the public docket and citing authority)).

Here, the proposed Settlement Agreement has been filed in this case and is public record. (See doc. 25-1.) Accordingly, its terms cannot be considered "confidential information" and the provision is, at least in part, unenforceable. See Eigenberger v. Tokyo Statesboro GA, LLC, No. 6:17-cv-160, 2018 WL 4677873, at *1 (S.D. Ga. July 2, 2018). Additionally, the remainder of the provision—which restricts the parties' right to discuss "the substance of any discussion about [the Settlement] Agreement, and the opinions and facts underlying the Agreement," (doc. 25-1, p. 2)—is, as written, overly broad, in contravention of FLSA policy, and an attempt to limit Plaintiff's rights under the First Amendment. See, e.g., Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010) ("[C]ompelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA . . . ."); Santiago-Valle v. The Transition House, Inc., 6:15-CV-715-ORL-40GJK, 2015 WL 9244681, at *1 (M.D. Fla. Dec. 18, 2015) (rejecting provision that stated that "[t]he parties agree to keep the facts, terms and amount of this Settlement Agreement in strict confidence other than filing this Settlement Agreement to obtain the Court's approval of the settlement"). Accordingly, the "Confidentiality" provision in the proposed Settlement Agreement is unenforceable.

**B. Release Provision**

The proposed Settlement Agreement contains the following "Release" provision:

> For and in consideration of the foregoing payments, [Plaintiff] . . . does hereby release, remise, acquit and forever discharge [Defendant] from any and all claims, demands, actions, causes of action or suits . . . of whatever kind or nature, known or unknown, in connection with or in any way relating to his employment with [Defendant], the [present FLSA claim] or any other claims that could have been asserted in [this lawsuit].

(Doc. 25-1, p. 2.)

"[A]n employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA."

5

Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010).  Accordingly, "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer."  Id. at 1352.  Accordingly, this Court has repeatedly ruled that settlement agreements which preclude suit on non-FLSA related claims are too pervasive to be fair and reasonable.  See Eigenberger, 2018 WL 4677873, at *2; Cruz-Vasquez v. Sanders Farms, Inc., No. 6:15-cv-048, 2016 WL 4492864, at *2 (S.D. Ga. Apr. 21, 2016) ("[T]his Court has consistently held that such provisions are improper."); Melvin v. People Sales & Profit Co., Inc., No. 2:14-cv-012, 2015 WL 13648559, at *1 (S.D. Ga. Jan. 23, 2015); see also Cantrell v. Bryan Cty. Bd. of Educ., No. 4:15-cv-169, 2015 WL 10057707, at *2 (S.D. Ga. Dec. 21, 2015).

Here, because the "Release" provision releases Defendant from non-FLSA claims, including claims that are "known or unknown," it is impermissibly pervasive.  See Melvin, 2015 WL 13648559, at *1 (finding a settlement agreement that would release defendant "not only from FLSA claims, but also from 'all possible claims,'" too pervasive); Cantrell, 2015 WL 10057707, at *2 (determining settlement agreement that would require plaintiffs to "release, settle and extinguish forever all claims which were asserted or which could have been asserted, whether known or unknown, accrued or unaccrued as of the date of this Release" was unacceptably pervasive).

### C.  Amendment, Modification and Waiver Provision

Provision 6 of the proposed Settlement Agreement includes the following sentence: "This Agreement may be amended, modified or waived, only by an agreement in writing signed by all Parties."  (Doc. 25-1, p. 3.)  This provision appears to attempt to negate the necessity of Court approval of the Settlement Agreement, as it provides for the parties to modify the Settlement Agreement without any limitation regarding when, why or how it can be modified.  Thus, it is

unenforceable. See Madison v. United Site Servs. of Fla., Inc., No. 6:16-CV-1991-ORL-41DCI, 2018 WL 2197757, at *1 (M.D. Fla. May 14, 2018) ("Pursuant to Lynn's Food Stores, Inc., 679 F.2d at 1355, any future modifications to the Settlement Agreements are unenforceable absent judicial approval.").

### D. Insufficient Information regarding Calculation of Settlement Proceeds

Finally, the parties have not provided enough information for the Court to adequately scrutinize the proposed Settlement Agreement. The proposed Settlement Agreement provides that Defendant "will pay the total sum of Eleven Thousand Five Hundred and NO/100 Dollars ($11,500.00) (the 'Settlement Proceeds')," which shall be paid as follows:

a. The sum of Six Thousand One Hundred Fifty-Four and 54/100 Dollars ($6,154.54) by check payable to [Plaintiff] . . .; and

b. The sum of Five Thousand Three Hundred Forty-Five and 46/100 Dollars ($5,345.46) by check payable to [Plaintiff's counsel's firm] . . . .

(Doc. 25-1, p. 2.) In the Joint Motion, the parties inform the Court that, "pursuant to Plaintiff's contingency fee agreement with his counsel," of the $5,345.46 to be paid to Plaintiff's counsel's firm, "Plaintiff's counsel will receive . . . $4,600[] in attorneys' fees and . . . $745.46 [will cover] costs." (Doc. 25, p. 4.) The Court will analyze each portion of the total sum in turn.

#### 1. Sum to be Paid to Plaintiff

One of the factors courts are charged with considering in determining whether a settlement is fair and reasonable is "the range of [the plaintiff's] possible recovery." Leverso v. SouthTrust Bank of Ala., Nat'l Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); see also Barrera, 2021 WL 1382146, at *2, *report and recommendation adopted*, 2021 WL 1394138. While the Joint Motion states what Defendant believes Plaintiff's maximum potential recovery would be if he did not settle his claim, there is no similar information about how much Plaintiff believes he could recover if he proceeded and was successful. Specifically, in the Joint Motion, Defendant states that it "contends

that Plaintiff was . . . exempt from overtime and [thus] was properly paid at all times" (and not entitled to *any* recovery), but even if Plaintiff did prove he was entitled to backpay, Defendant contends, Plaintiff's damages "must be calculated on a half-time basis" and his "maximum potential overtime recovery using his alleged overtime hours would be $3,128.40" (which is based on "88 weeks x 5 OT hours x $7.11 half time rate"). (Doc. 25, p. 2, n.1.). There is no information, however, about what Plaintiff contends his maximum recovery amount would be, other than his general assertion that he is entitled to "the overtime wage differential" for 440 overtime hours. (Id. at p. 2.)

Additionally, the parties have not provided any details about how they arrived at the specific sum that Defendant has agreed to pay Plaintiff. Plaintiff's Complaint requests, *inter alia*, unpaid wages, liquidated damages under the FLSA, and pre-judgment interest on unpaid wages. (Doc. 1, pp. 5–6.) As referenced above, Plaintiff has never disclosed the specific amount of unpaid wages to which he believes he was entitled, and neither the Joint Motion nor the proposed Settlement Agreement states how much or what portion of the amount to be paid to Plaintiff represents unpaid wages Defendant has agreed to pay Plaintiff. Under the FLSA, if a plaintiff is entitled to recover unpaid wages, then he is statutorily entitled to an equal amount of liquidated damages. 29 U.S.C. § 216(b). Therefore, the parties should also inform the Court how much of the settlement proceeds they have allotted to back wages and liquidated damages, respectively, as well as the process by which they arrived at these totals. If, instead, the settlement does not include both back wages and liquidated damages, the parties must explain why it does not. See Nichols v. Dollar Tree Stores, Inc., No. 1:13-CV-88 WLS, 2013 WL 5933991, at *2 (M.D. Ga. Nov. 1, 2013) (denying a settlement agreement that did not state whether the plaintiff received liquidated

damages, or if not, the reasons why). Without such clarification, the Court cannot approve the proposed Settlement Agreement.

### 2. Sums to be Paid to Plaintiff's Counsel

Finally, the agreed-upon payments to Plaintiff's counsel for attorney's fees and costs is concerning. The FLSA mandates that in any action brought by an employee to enforce § 206 or § 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). However, as indicated in the statute, the Court must be able to find that the fee is reasonable and that the costs are actually recoverable. Moreover, in an FLSA settlement, "a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorneys' fees and costs." Petrov v. Cognoscenti Health Inst., LLC, No 6:09-CV-1918-ORL-22GJK, 2010 WL 557062, at *3 (M.D. Fla. Feb. 12, 2010). Therefore, the "simultaneous negotiation of attorney's fees with a damages award in a FLSA settlement should trigger increased scrutiny of the reasonableness of the settlement." Grimes v. Se. Restaurants Corp., No. 1:12-CV-150 WLS, 2013 WL 4647374, at *3 (M.D. Ga. Aug. 29, 2013). However, if the parties represent "that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless . . . there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney," the Court should approve the fee settlement agreement. Bonetti v. Embarq Mgmt. Co., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Here, the Joint Motion initially states that the amount to be paid for attorney's fees ($4,600.00) and costs ($745.46) was determined "[p]ursuant to Plaintiff's contingency fee agreement with his counsel." (Doc. 25, p. 4.) Later, the Joint Motion states:

> As of the date of filing this motion for settlement approval, Plaintiff's counsel and firm staff have incurred $6,107.75 in time in this matter using a $250 rate for Attorney Roberts and $95 rate for Plaintiff's paralegals, Linda Petmecky and Marilyn Schmitt. The experience of Plaintiff's counsel and paralegals are detailed in the Declaration of V. Severin Roberts. [(Doc. 25-3.)] Plaintiff's counsel's actual hourly rate is $400, however, counsel has provided the fees incurred using the $250 rate per the Court's instruction in another FLSA case. As reflected by the records, Plaintiff's counsel and paralegal have incurred more fees in this matter than this settlement is compensating as the settlement only provides for $4,600 in attorneys' fees.

(Doc. 25, p. 6.) Attached as exhibits to the Joint Motion are an "Itemization of Time" spent by Plaintiff's counsel and his staff on this case, (doc. 25-2), and Plaintiff's attorney's declaration, referenced in the quoted passage above, (doc. 25-3). The parties have not, however, provided any details or documentation to support the $745.46 proposed sum to be paid for costs.

The parties have not represented to the Court that the attorney's fee amount was agreed to separately and without regard to the amount paid to Plaintiff. Quite to the contrary, the fact that the proposed Settlement Agreement and the Joint Motion frequently reference the *total* settlement amount (of $11,500) coupled with the statement in the Joint Motion that the attorney's fees and costs sums were determined "[p]ursuant to Plaintiff's contingency fee agreement with his counsel," (doc. 25, p. 4), indicate that the attorney's fees and costs awards were likely negotiated simultaneously with the damages award to be paid to Plaintiff, triggering increased scrutiny of the reasonableness of the settlement.

As to the attorney's fees, the Court is given considerable pause, at the outset, by the statement that the specific sums are being paid to counsel "[p]ursuant to Plaintiff's contingency fee agreement with his counsel," particularly given the fact that the attorney's fees award ($4,600.00) represents *exactly* 40% of the total amount being paid by Defendant to settle Plaintiff's claim ($11,500). See Bouchard v. Florida Citrus World, Inc., No. 6:09-cv-2-ORL-31GJK, 2009 WL 2423300, at *2 (M.D. Fla. Aug. 4, 2009) ("In FLSA cases, the Eleventh Circuit has questioned

the validity of contingency fee agreements.") (citing Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009)). Regardless, however, of how the parties arrived at the precise attorney's fees sum, the Court is charged with ensuring that the amount to be paid is fair and reasonable. This requires the Court not only to determine that the hourly rate at which Plaintiff's counsel and his paralegals are seeking to be reimbursed is appropriate, but also that the time for which they seek to be reimbursed is, indeed, reimbursable under the FLSA. See Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.") (quotation omitted). "[F]ee counsel should have maintained records to show the time spent on the [case], and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Hous. Auth., 836 F.2d 1292, 1303 (11th Cir. 1988). Moreover, fee applicants must provide "fairly definite information" concerning activities performed by each attorney. See Mallory v. Harkness, 923 F. Supp. 1546, 1556 (S.D. Fla. 1996) (quoting FMC Corp. v. Varonos, 892 F.2d 1308, 1317 (7th Cir. 1990)). Finally, time spent on purely clerical tasks is not reimbursable and thus should not be included in any calculations or ledgers. See Rodriguez v. Fuji Sushi, Inc., No. 6:08-CV-1869-ORL-22KRS, 2009 WL 1456444, at *9 (M.D. Fla. May 22, 2009) (quoting Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.")).

Given that the Court is denying the Joint Motion on various other grounds without prejudice to the parties' right to refile it (along with a revised proposed settlement agreement), the Court declines to scrutinize the appropriateness of the proposed attorney's fees award at this time. The Court notes, however, that its cursory review of the "Itemization of Time" submitted by

Plaintiff's counsel reveals a number of entries that either lack the necessary specificity in describing various tasks (i.e., multiple entries for "Email: Doyle Norman") or reflect purely clerical tasks (i.e., entries for receipt of automatically-generated "Notices of Filing" from the Court, which do nothing more than notify the recipient that an entry has been made on the docket, and entries for receipt of "automatic reply" emails from unnamed email recipients). (See doc. 25-2.) Should the parties submit a revised joint motion for approval of settlement agreement, Plaintiffs' counsel shall submit a supplemental or revised itemization, taking into close consideration the relevant requirements and legal parameters.

As for the costs, Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." A district court may not permit a costs award in excess of those permitted by 28 U.S.C. § 1920. See Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1575 (11th Cir. 1988) (district court erred in awarding expert witness fees under § 216(b) that exceeded the amount allowed by § 1920). Here, without any sort of ledger or itemization showing the specific expenses that the costs award is intended to reimburse, the Court is unable to assess, as it must, the reasonableness of the costs award, and the proposed costs award therefore cannot be approved.

## CONCLUSION

For the reasons set forth herein, the Court **DENIES** the Joint Motion without prejudice. (Doc. 25.) Within **TWENTY-ONE (21) DAYS** of the date of this Order, the parties may file on the public docket a revised joint motion for approval of settlement agreement with an amended proposed settlement agreement attached. The amended settlement agreement and/or accompanying documents should describe how the parties arrived at Plaintiff's settlement amount (including information about whether any portion represents liquidated damages), and provide the

necessary sufficient support for the attorney's fees award and the costs award.  Further, the Court reiterates that it will not approve a settlement agreement that contains a confidentiality provision, pervasive release language which might be interpreted to preclude suits based upon non-FLSA claims, or language permitting the parties to modify the Settlement Agreement without limitations or Court approval.

If the parties do not move for approval of a revised settlement agreement within **TWENTY-ONE (21) DAYS**, the Court **DIRECTS** the parties to, at that time, submit a report setting forth the status of the case including any continued settlement discussions and the progress of discovery.

**SO ORDERED**, this 8th day of July, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA